ISAAC SOMERS v. CATHERINE SOMERS.

1. ALIMONY, *Not for Husband.*   An action for alimony cannot be maintained by the husband against the wife.

2. TITLE, *Vested in Wife; Finding, Not Disturbed.*   The trial court having made a special finding that certain real property conveyed by the husband, through a trustee, to the wife, vested in her an absolute title, and that she did not hold it in trust for the husband, and

there being some evidence to sustain such finding, it will not be disturbed here.

### Error from Sedgwick District Court.

ACTION by *Isaac Somers* against his wife, *Catherine Somers*, to recover the title to certain land, etc. The plaintiff prayed for a decree setting apart to him as his permanent alimony the southeast quarter of section 23, township 28, range 2 east, in Sedgwick county; that the defendant be decreed to hold the title thereof in trust for him; that she be ordered to reconvey the same by good and sufficient deed of general warranty; and in case the title thereof cannot be so conveyed, then for a judgment of five thousand dollars, the value of said premises, and also in addition to the above decree, a judgment for nine hundred dollars and costs of this action.

Trial by the court at the October term, 1886, D. M. D., judge *pro tem.*, presiding. The court made findings of fact and conclusions of law as follows:

"1. Said plaintiff and defendant were married, in Marshall county, Indiana, in the spring of 1880.

"2. Prior to said marriage said parties resided in said county and state, and both had children living there by former marriages.

"3. Plaintiff at the time of said marriage with defendant was about seventy years of age, of average health, a widower, and had been married twice before.

"4. Defendant at the time of said marriage was about fifty years of age, of good health, a widow, and had been married twice before.

"5. She had been divorced from her first husband, Stroup, who is now living at said county and state, and afterward married one Gerard, who died, leaving her about sixty acres of land in said county.

"6. Prior to said marriage with defendant, plaintiff owned some land in said county, which he traded for the land in controversy, and in said trade obtained some farming implements and stock on said land, together with about five hundred dollars cash.

"7. Said trade was made shortly before said marriage, and a deed of the land taken in the name of plaintiff.

"8. Shortly after said marriage, plaintiff and defendant

moved from the state of Indiana, to said farm in Sedgwick county, Kansas.

"9. After their arrival in Sedgwick county, Kansas, and while living on the land in controversy, plaintiff and defendant executed a deed for same to one T. B. Wall, who immediately executed a deed of same to defendant.

"10. Said deeds were executed as aforesaid at the request of said parties, and there was no monetary consideration for the same.

"11. Plaintiff, prior thereto, had had trouble with some of his children, and on the day said deeds were executed had trouble with his son Calvin.

"12. Fearing other trouble with his children, and expecting to live a happy and harmonious life with defendant, he executed the deeds aforesaid, and defendant at the time she accepted said deed knew that plaintiff expected a happy and harmonious life with her.

"13. Some time afterward, and in the fall of 1880, plaintiff and defendant moved back to the farm of defendant, in Marshall county, Indiana.

"14. Said parties lived happily and harmoniously together until after their arrival in Indiana.

"15. Shortly after their arrival in Marshall county, Indiana, they commenced to have trouble between themselves, and thereafter had frequent trouble until the spring of 1883, when the plaintiff—with the assistance of his son Joshua, during the absence of said defendant—moved his stock and other property to the residence of his son Joshua, near the home of defendant.

"16. Shortly afterward he returned to defendant, and they lived together until the fall of 1883, when they had further trouble, which led to a final separation.

"17. During the time they lived together on defendant's farm in Marshall county, Indiana, plaintiff did such work upon the place as he was capable of doing.

"18. After said separation mentioned, and in the fall of 1883, defendant commenced an action for divorce against plaintiff in the circuit court of Marshall county, Indiana, and a summons was issued therein and left at the residence of Joshua Somers, a son of said plaintiff.

"19. Afterward one Hess, a lawyer of Plymouth, in said county, at the request of said Joshua Somers, appeared in said action for defendant, issues were joined, trial had, and defendant obtained a divorce against said plaintiff.

"20. No service was had in said action upon plaintiff, either personally or by publication.

"21. He never entered his appearance therein, and never authorized anyone to appear for him.

"22. He had no knowledge of the fact that Joshua Somers employed said Hess to attend to said case, and never authorized said Joshua to employ anyone to appear for him in said case.

"23. He never ratified the act of said employment.

"24. Since the execution of said deed defendant has received the rents arising from said land over and above the expenses incurred from the same, to the amount of $150.

"25. Plaintiff is now unable to support himself, and is living with his daughter and son-in-law at Newton, Kansas, and has in money not to exceed $15.

"26. He has no means of support, and is living upon the charity of his children aforesaid.

"27. The land in controversy is of the value of $3,200.

"28. After their return to Indiana as aforesaid, said plaintiff expended $50 in payment of taxes on defendant's farm in Indiana aforesaid."

"CONCLUSIONS OF LAW.

"1. No legal divorce was granted defendant.

"2. The defendant does not hold said land in controversy in trust, but is the absolute owner of the same.

"3. The plaintiff cannot obtain alimony in his wife's property in this action.

"4. The defendant is entitled to judgment for costs."

Judgment accordingly for defendant. The plaintiff brings the case here.

*Ady & Henry*, for plaintiff in error.

*Peters, Lathy & Holliday*, for defendant in error.

Opinion by SIMPSON, C.: The petition of the plaintiff in error, (plaintiff below,) contains two counts: the first for alimony alone, by reason of the aggression of the wife; and the second praying for a decree declaring a conveyance to land made by the husband to the wife, through a third party, to be in trust, and an assignment of this land as alimony. The blending of the two propositions in the statement of the second

cause of action is somewhat peculiar, and we are in some doubt as to the proper construction to be given the pleadings, for if the land is to be decreed as alimony, this is a recognition that it is the absolute property of the wife, unincumbered by a trust, or any other equity; but if it was conveyed in trust, the husband has the legal right to insist on the protection of his beneficial interest without reference to the question of alimony. We shall have to view the statement of the first cause of action as one for alimony by the husband, as against the wife; and the second as an action to declare a trust. No question arose in the court below, as to whether two such causes of action can be properly joined; nor is the matter referred to in the briefs of counsel filed in this court. We express no opinion about it.

As to the cause of action which asks alimony on behalf of the husband from the property of the wife, we can find no case that authorizes it. The domestic relations will have to be readjusted by the legislature, and an obligation cast upon the wife to support the husband, before such an action can be maintained. The only question is, as to whether the conveyance of the Sedgwick county land by the husband to the wife was in trust. On its face, the conveyance was an absolute one. The deed was first made by husband and wife to Wall, and then a deed was executed by Wall to the wife. At the time of the execution of these conveyances, it was distinctly stated by the husband to Wall, that the object of the conveyance to the wife was to prevent the children of the husband by a former marriage from ever receiving any benefit from the property. Substantially the same statement was made by the husband, as a witness in a former case pending between these parties. There is other evidence corroborative of this, and there is some that tends to support the theory that the property was deeded to the wife as a contribution to her future support. On the other hand, there is testimony tending to show that the wife had declared before the marriage that her sole object was to get control of her husband's property; and that after the conveyance had been executed,

the wife had declared that she had agreed to reconvey it whenever the husband desired it. The conveyance was made to the wife on the day following a very serious trouble between the husband and one of his sons. Analyzing the testimony; considering the evidence in the light of all the surrounding circumstances; recollecting that while some of the testimony was in the form of depositions, the parties themselves were personally before the trial court, and fully recognizing the fact that there is evidence to sustain the findings and conclusions of the trial court on the particular question that the wife does not hold the land in trust, we cannot without a violation of the repeated declarations of this court, say that there was material error in these findings and conclusions. It is evident from the record that unusual effort had been expended in the preparation of the evidence, and much bad feeling generated by the litigation, but the trial seems to have been conducted in a spirit of fairness; some liberality was allowed in the admission of evidence on both sides; and probably every material fact presented that would tend to support the contention of the respective parties. This being the case, and no prejudicial error being apparent, we can do nothing else but recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.